## CRAWFORD *v.* EDGERTON.

(*Circuit Court, D. Indiana.* June 14, 1889.)

1. EQUITY—ACCOUNTING—CONDITIONAL SALE.
   Plaintiff bought of defendant certain standing timber, to cut into hoops, to be paid for at a certain fixed time. There was a dispute as to the measurement, plaintiff claiming that he had paid for all timber cut. Defendant replevied certain hoops, alleging they had not been paid for, and, on judgment in his favor, plaintiff, having sold the hoops, paid defendant their value, and sued defendant for the amount paid in excess of the balance alleged by plaintiff to be due. *Held,* that the money paid to defendant took the place of the property, and was subject to the same remedies, and plaintiff was entitled to an accounting.

2. ESTOPPEL—BY JUDGMENT.
   The judgment in replevin did not estop plaintiff from prosecuting such an action.

In Equity. Bill for an accounting.

On the 29th of August, 1878, the complainant and one Crandall entered into a contract with the defendant, the provisions of which, material to an understanding of the case, are these:

"(1) For the consideration and upon the conditions hereinafter expressed, said E. agrees to sell and license said C. & C. to cut and make into hoops and remove from his land * * * the black ash trees suitable for racked hoops; said timber to be all cut, worked up, and removed from the land as rapidly as reasonably practicable, and within four years from the first day of Sept., 1878. (2) Said C. & C. are to pay said E. for said ash hoop timber one dollar and forty cents per 1,000 feet of timber cut, suitable for hoops, log measure; and all the black ash timber that it is practicable to use shall be taken as it runs, and is to be worked up and accurately measured, and a correct account and statement of all measurement is to be kept and rendered to said E. upon his demand, * * * it being understood and agreed that the entire amount of timber cut on said land for hoops shall be fully paid for on or before Sept. 1st, 1882; and all timber got out and not paid for shall be and remain the property of said E. until paid for. (3) In consideration of the agreement and license aforesaid, said C. & C. agree forthwith to commence and prosecute to completion, and complete by the first day of January, 1880, a good and suitable tram-road; [on said land,] * * * and said C. & C. are to have the free use of said tram-road to execute the purposes of this contract until said Sept. 1st, 1882, and for one year thereafter, in so far as the use of the same may not interfere with the use by said E. of his land and timber, * * *" "(6) Default in performance or violation of any of the terms of this contract by said C. & C. shall work a forfeiture thereof by them at the option of said Edgerton, and entitle him to full indemnity in damages. * * *"

Additional facts appear in the opinion.

*A. A. Chapin* and *T. E. Ellison*, for complainant.

*R. C. Bell* and *S. L. Morris*, for defendant.

WOODS, J. The original contract between the parties is not simply a license, but an agreement by Edgerton to sell (as well as license the purchasers to cut, etc.) "the black ash trees suitable for racked hoops," upon the described land, "to be all cut, worked up, and removed from

the land as rapidly as reasonably practicable, and within four years from the 1st day of September, A. D. 1878." And by the force of the clause in respect to the use of the tram-road, the time for removal, it is clear, was extended to September 1, 1883. The sale, however, was not absolute, but upon condition that the title of the timber, though cut and worked up, should remain in Edgerton "until paid for." A further plain effect of the agreement is that it shows a sale of all the timber on the land suitable for racked hoops, and, while Crawford and Crandall perhaps had no right to cut after September 1, 1882, they were bound to cut it all before that date, and remove it within a year thereafter, and for a failure either to cut or remove, or both, Edgerton might have claimed damages, if any resulted. He could probably, by consenting to an extension of time for cutting and removing, have insisted upon payment for all timber left standing, as if it had been cut within the stipulated time. In other words, notwithstanding the expiration of the time, he might have insisted that all the timber embraced in the contract should be paid for at the stipulated price, and, if he suffered damage by the purchaser's delay to cut and remove, might have claimed that also. To say the least, the right to cut continued until September 1, 1882, and all efforts before that date to declare a forfeiture of the contract were unfounded and nugatory.

The merits of the case, in my judgment, after carefully reading all the evidence, including letters and suggestions of counsel, are in a small compass. There was a dispute between the parties in respect to the rule of measurement, Crawford and Crandall claiming Doyle's rule, and Edgerton insisting upon Scribner's. By Doyle's rule, the timber cut and removed had been paid for; but by Scribner's, 150,500 feet had not been paid for. Edgerton replevied a quantity of hoops, valued at $843; and at the trial, under the instructions of the court, there was a finding for Edgerton upon the theory that Scribner's rule was the true rule, and consequently, the timber in the hoops not having been paid for, the title of the hoops and the right of possession were in Edgerton, and he had a verdict for the return of the property or the payment of its value, assessed at the sum stated. Crawford and Crandall, having sold the hoops, paid into court or to Mr. Edgerton their value, and brought this action, after demand, for the recovery of the excess over the amount due and unpaid to Edgerton for the timber. If, in pursuance of the judgment in replevin, Crawford and Crandall had returned the property, it is, I suppose, beyond dispute that, upon payment of the balance due Mr. Edgerton, they would have been entitled to retake possession; and my judgment is that the money paid upon the judgment took the place of the property, and was subject to the same rights and remedies. The judgment settled nothing to the contrary, and constitutes no estoppel against an inquiry into the facts and to an adjudication according to the equities of the case. Any bailee or trustee, entitled to the possession of property, securities, or money, may recover from the owner, who has taken unlawful possession, the money or property or value thereof if converted, but after such recovery it is clear that the

rights and the title of the bailee or trustee, as against the owner, would be the same as if there had never been occasion for such action and the judgment never rendered. Decree for plaintiff.